IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LORI ANN S. | : CIVIL ACTION |
| | : |
| v. | : NO. 22-4473 |
| | : |
| FRANK BISAGNANO | : |

## MEMORANDUM

**MURPHY, J.**                                                                                                **June 26, 2026**

Before us is Magistrate Judge Carlos's report and recommendation (R&R), filed February 12, 2026, recommending affirmance of the ALJ's denial of disability insurance benefits to Ms. S., and Ms. S.'s objections to that R&R. *See* DI 14[1]; DI 15. Under 28 U.S.C. § 636(b)(1), we review de novo the portions of the R&R to which Ms. S. lodged specific, timely objections. We give "reasoned consideration" to all other portions of the R&R by reviewing for plain error. *Equal Emp. Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 100 (3d Cir. 2017) (quoting *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987)). Because the ALJ's determinations were based on substantial evidence, we affirm and adopt the entire R&R. Our reasoning is fully explained below.

## I.      Background

Ms. S. did not object to Judge Carlos's detailed summary of the procedural and factual background related to this action. After reviewing for plain error, we adopt the background of the R&R which includes the sections titled "Factual and Procedural History," and "The ALJ's Decision." *See* DI 14 at 2-3. For the sake of clarity in this memorandum, we give a shortened version of the detailed background in the R&R.[2]

---

[1] We adopt the sequential pagination supplied by the CM/ECF docketing system.
[2] The sole exception to this is that for completeness we provide a more thorough

Ms. S. is a 61-year-old woman who alleges disability from fibromyalgia, osteoarthritis, back issues (bulging discs), spinal stenosis, nerve compression, depression, chronic fatigue, and chronic pain. DI 14 at 2. Beginning around 2017, Ms. S. began using intermittent Family and Medical Leave (FMLA) from her employment as a surgical technician, sterilizer, and materials manager. *Id.* Then on August 19, 2020 she decided to stop working to avoid compromising the safety of her patients. *Id.*

About a month later, on September 13, 2020, Ms. S. applied for disability insurance benefits. Her disability claim was initially denied on December 21, 2020 and again on reconsideration on April 23, 2021. *Id.* Ms. S. then requested a hearing before an Administrative Law Judge (ALJ) and a telephone hearing was held on October 19, 2021 before ALJ Stuart Gauffreau. *Id.* After this hearing, on October 27, 2021, the ALJ issued a written decision denying Ms. S's claim. *Id.*

The ALJ evaluated Ms. S's claim using the five-step sequential analysis set forth in the Social Security regulations. DI 14 at 3; DI 8-2 at 35-36. "At step one, the ALJ determines whether the claimant is performing 'substantial gainful activity.'" *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)). "If he is, he is not disabled. Otherwise, the ALJ moves to step two." *Hess*, 931 F.3d at 201 (citation modified). "At step two, the ALJ considers whether the claimant has any 'severe medically determinable physical or mental impairment' that meets certain regulatory requirements." *Id.* (citing §§ 404.1520(a)(4)(ii)). "A 'severe impairment' is one that 'significantly limits [the claimant's]

---

breakdown of the five-step process followed by the ALJ for assessing disability claims than was provided in the R&R.

physical or mental ability to do basic work activities[.]'" *Id.* (citing § 404.1520(c)). "If the claimant lacks such an impairment, he is not disabled. If he has such an impairment, the ALJ moves on to step three." *Id.* (citation modified).

At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). "If the claimant's impairments do, he is disabled. If they do not, the ALJ moves on to step four." *Hess*, 931 F.3d at 201 (citation modified). "At step four, the ALJ assesses the claimant's 'residual functional capacity' ('RFC') and whether he can perform his 'past relevant work.'" *Id.* (citing § 404.1520(a)(4)(iv)). "A claimant's '[RFC] is the most [he] can still do despite [his] limitations.'" *Id*. at 202 (citing § 404.1545(a)(1)). "If the claimant can perform his past relevant work despite his limitations, he is not disabled." *Id.* (citing §§ 404.1520(a)(4)(iv)). "If he cannot the ALJ moves on to step five." *Id.* (citation modified). "At step five, the ALJ examines whether the claimant 'can make an adjustment to other work[,]' considering his '[RFC,] . . . age, education, and work experience[.]'" *Id.* (citing § 404.1520(a)(4)(v)). "If the claimant can make an adjustment to other work, he is not disabled. If he cannot, he is disabled." *Id.* (citation modified). The claimant has the burden of proof at steps one through four, and then at step five, the burden shifts to the Social Security Administration. *Id*. at 201.

Here, after engaging in this process, the ALJ found that:

- **(Step 1)** Ms. S. has not engaged in substantial gainful activity since her alleged onset date of August 19, 2020;

- **(Step 2)** Ms. S. suffered from the following severe impediments: lumbar and thoracic

3

spine disorders, chronic pain syndrome, right middle finger disorder, and obesity.  Her

recurrent kidney stones, hypertension, hyperlipidemia, hypokalemia, depression, and

anxiety were deemed non-severe;

- **(Step 3)** Ms. S. did not have an impairment or combination of impairments that met or

  medically equaled the severity of a listed impairment in the regulations.  Specifically, the

  ALJ compared Ms. S's impairments to Listings 1.15 and 1.16 (spine disorders) and 1.18

  (joint dysfunction).  *See* 20 C.F.R. Pt. 404, Subpt. P. App. 1.

- **(Step 4)** Ms. S. had an RFC to perform "light work" which is defined under the

  regulations as work that "involves lifting no more than 20 pounds at a time with frequent

  lifting or carrying of objects weighing up to 10 pounds." [3]  20 C.F.R. § 404.1567(b).

  Thus, Ms. S. could perform her past relevant work as a surgical technician material

  manager, surgical technician, and sterilizer.

DI 14 at 3-4.  Therefore, the ALJ concluded that Ms. S. was not disabled as defined by the

Social Security Act.  *Id* at 4.

The Appeals Council denied Ms. S.'s subsequent request for a review, meaning that the

ALJ's written opinion became the final decision of the Commissioner.  DI 14 at 2-3.  Ms. S.

then filed this action under 42 U.S.C. § 405(g).  *See* DI 1.  We referred the matter to Magistrate

Judge Pamela A. Carlos.  *See* DI 13.  Judge Carlos reviewed the full administrative record and

issued an R&R recommending affirmance of the ALJ's decision.  *See* DI 14.

---

[3] Technically, the ALJ assessed Ms. S's RFC between steps three and four, which is consistent with the regulations.  *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity.").  But for simplicity here, we treat the RFC assessment as part of step four.  *See also Hess*, 931 F.3d at 201 n.2.

Ms. S. now raises two objections to Judge Carlos's R&R.  *See* DI 15.  First, she challenges Judge Carlos's affirmance of the ALJ's determination that Ms. S's depression and anxiety were not severe impairments under the regulations.  *See* DI 15 at 1-4.  Second, she objects to Judge Carlos's affirmance of the ALJ's decision to reject the opinion of Ms. S.'s treating physician Dr. John Travers.  *Id.* at 5-6.  We address each objection in detail below.

## II.    <u>Discussion</u>[4]

We review de novo those portions of the R&R to which Ms. S. has lodged specific, timely objections.  28 U.S.C. § 636(b)(1).  We must uphold the ALJ's factual findings — including the ALJ's determination of disability — if they are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014); 42 U.S.C. § 405(g).  "The substantial evidence threshold is not high."  *Sudler v. Comm'r of Soc. Sec.*, 827 F. App'x 241, 244 (3d Cir. 2020) (citation modified).  "It is more than a mere scintilla but may be somewhat less than a preponderance of the evidence."  *Zirnsak*, 777 F.3d at 610; *see also Biestek v. Berryhill*, 587 U.S. 97, 98 (2019) ("Substantial evidence . . . means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation modified).  Under this standard, we review the record, do not re-weigh evidence, and are deferential to the judgment of the fact finder.  *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011).  However, the ALJ's legal conclusions are reviewed under a plenary standard.  *See Hess.*, 931 F.3d at 208 n.10.

---

[4] We note for the record that while we only address the specific parts of the R&R to which Ms. S. objected, we agree with the conclusions of Judge Carlos's entire report for the wholly persuasive reasons stated therein.

### A. Objection 1: ALJ's Step Two Analysis of Plaintiff's Mental Health Impairments

Ms. S. first objects to the ALJ's conclusion that Ms. S's depression and anxiety were non-severe impairments. As we mentioned above, at step two of the disability analysis, an ALJ must determine whether the claimant has any medically determinable impairments (or combination of impairments) that are "severe." *See* 20 C.F.R. § 404.1520(a)(ii). To be considered severe, an impairment (or combination of impairments) must "significantly limit" the claimant's ability to perform "basic work activities." § 404.1520(c). In determining this, the ALJ assesses how the limitation restricts the claimant in four broad functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *Hess*, 931 F.3d at 202 (citing 20 C.F.R. § 404.1520a(c)(3)). The ALJ rates the degree of limitation in these areas on a five-point scale: None, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). If the claimant receives scores of "none" or "mild," the ALJ will generally conclude that the impairment is not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in [the applicant's] ability to do basic work activities." § 404.1520a(d)(1).

Here, the ALJ's conclusion that Ms. S's depression and anxiety were non-severe was supported by substantial evidence: The ALJ thoroughly evaluated the record evidence that included both Ms. S.'s self-reported symptoms as well as her mental health treatment records from Dr. Stephanie McDonough (the only treatment notes from a mental health professional in the record) and concluded that Ms. S.'s mental impairments imposed at most mild limitations on the four functional areas. Starting with the first functional area, the ALJ reasoned that Ms. S.'s

6

depression and anxiety did not affect her ability to understand, remember, and apply information. In reaching this conclusion, the ALJ considered the fact that Ms. S. is a high-school graduate who has performed semi-skilled work, and also was persuaded by Dr. McDonough's treatment notes that Ms. S. has average intelligence. DI 8-2 at 37; DI 8-7 at 160. Next, as for interacting with others, the ALJ found again that Ms. S's depression and anxiety imposed no limitation. In support of this determination, the ALJ cited Ms. S.'s testimony before him that she did not have problems getting along with others and lived with several family members. The ALJ also credited Ms. S's Function Report,[5] where she admitted to driving, going out alone, shopping for groceries, and sometimes socializing with friends, and denied having difficulty getting along with family, friends, neighbors, or authority figures. DI 8-2 at 37; DI 8-6 at 22-32. Finally, the ALJ referenced Dr. McDonough's notes, who indicated that Ms. S. had a depressed mood but an otherwise normal mental status. DI 8-7 at 160.

Moving to the third functional area of concentrating, persisting or maintaining pace, the ALJ concluded that Ms. S. had a mild limitation. In reaching this conclusion, the ALJ credited Ms. S's testimony that her anxiety and depression caused her to be exhausted and have difficulty concentrating. But countervailing this was the fact that Ms. S. admitted in her Function Report to managing her funds, helping care for her 3-year-old grandson, reading, watching television, and listening to podcasts. Ms. S. also wrote in the report that she could pay attention for "a while" and that she was able to follow instructions "very well." DI 8-2 at 37; DI 8-6 at 22-32. Finally, the ALJ credited Dr. McDonough's treatment notes, who indicated that Ms. S. had an

---

[5] A Function Report is a questionnaire that allows the Social Security Administration to gather information about an applicant's disability to help the agency determine the applicant's eligibility for benefits. *See* DI 8-6 at 22-32.

intact memory and good attention.  DI 8-7 at 160.

Finally, as for the fourth functional area, the ALJ reasoned that Ms. S's depression and anxiety did not affect her ability to adapt and manage herself.  In support of this determination, the ALJ cited to Ms. S's testimony and Function Report where she admitted to engaging in a broad range of daily activities including attending to personal care, babysitting her grandson, doing light household chores, preparing simple meals, driving, doing light loads of laundry, and shopping with her father.  DI 8-2 at 37-38; DI 8-6 at 22-32.  And the ALJ credited the treatment notes of Dr. McDonough, who did not indicate any problem with Ms. S's ability to perform daily activities.  DI 8-7 at 154-161.  Thus, taking all of this into account, the ALJ determined that Ms. S's mental impairments were not severe under the applicable regulations.  DI 8-2 at 38.

Ms. S. raises several objections to the ALJ's dismissal of her mental impairments, but none has merit.  DI 15 at 1-4.  First, Ms. S. argues that it was unreasonable for the ALJ to base a finding of non-severity on Ms. S.'s past abilities to concentrate at work.  But this mischaracterizes the ALJ's process: The ALJ only considered Ms. S.'s past work history in evaluating her limitations in the first functional area of understanding, remembering or applying information.  For all other parts of the analysis, the ALJ relied on more recent and relevant sources including Ms. S's testimony in front of the ALJ, her Function Report, and her mental examination with Dr. McDonough.  DI 8-2 at 37.  And even when the ALJ considered Ms. S.'s work history as part of his analysis, the ALJ also credited the treatment notes of Dr. McDonough in deciding that Ms. S's mental impairments did not affect her ability to understand, remember or apply information.  *See Robin W. v. Bisignano*, No. CV 24-5680, 2026 WL 173802, at *6 (E.D. Pa. Jan. 22, 2026) (finding the ALJ's consideration of mental status examinations to be

8

highly relevant in concluding that the claimant only had a mild limitation in understanding, remembering, and applying information.).  Thus, we reject Ms. S.'s first objection.[6]

Second, Ms. S. argues that the ALJ should not have been persuaded by the lack of evidence concerning her difficulties with social interactions in concluding that she could concentrate, persist, and maintain pace.  But this again mischaracterizes the ALJ's process.  The ALJ did not rely on a dearth of evidence in finding Ms. S. had an ability to concentrate, but rather relied on affirmative evidence showing she possessed these social skills.  For example, the ALJ credited Ms. S's admissions from her Function Report that she managed funds, took care of her grandson, read, watched television, and listened to podcasts. All of this is certainly relevant to determining whether Ms. S.'s mental impairments were severe.  *See e.g. Facer v. Comm'r Soc. Sec.*, No. 25-1155, 2026 WL 146711, at *2 (3d Cir. Jan. 20, 2026) (crediting the claimant's "limited participation in hobbies including hunting, fishing, walking, and riding 4-wheelers" as evidence that her mental impairments were not severe); *Babice v. Comm'r of Soc. Sec.,* No. CV 16-06254-BRM, 2018 WL 6243045, at *6 (D.N.J. Nov. 29, 2018) (crediting the claimant's admission that "she spends the day watching television and reading . . . [can] pay bills, maintain

---

[6] We note for the record that we disagree with the ALJ's decision to assign any weight to Ms. S.'s past work history in evaluating her performance in the first functional area.  This is because while the "[a]ssessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence," *see* 20 C.F.R. § 404.1520a, we do not believe Ms. S.'s past work experience constitutes relevant evidence as she stopped working before her alleged disability onset date.  Still, the fact that: (1) the ALJ considered many pieces of relevant evidence in reaching his conclusion and (2) there is a lack of contrary evidence in the record that Ms. S.'s mental impairments were severe persuades us that the ALJ's consideration of Ms. S's past work history was harmless.  *See Timothy J. B. v. O'Malley*, No. 4:22-CV-1036, 2024 WL 968875, at *4 (M.D. Pa. Mar. 6, 2024) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.") (quoting *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989)).

a savings account, count change, and use a checkbook" as evidence that her depression and anxiety did not impair her ability to concentrate).

Third, Ms. S. argues that the ALJ did not account for the fact that her ability to do limited activities around the house is dependent on her being able to take frequent rests and receive help from her daughter and father.  But the ALJ *did* factor these limitations into consideration, acknowledging that Ms. S's limited activities required "*some* capacity for sustained concentration and attention" and that "she [Ms. S.] *and her elderly father* cared for her 3-year-old grandson[.]"  DI 8-2 at 37 (emphasis added).  Therefore, we dismiss this objection.

Finally, we agree with Judge Carlos that even if the ALJ did err in his step two analysis — and he did not — this would not require remand.  "When an ALJ finds that the claimant has at least one severe impairment, omission of another at step two may be harmless error as long as the impairment is considered regarding the RFC or would not affect the outcome of the case." *Richardson v. Comm'r of Soc. Sec.,* No. CV 16-8279 (KM), 2017 WL 6550482, at *5 (D.N.J. Dec. 22, 2017) (citing *Salles v. Comm'r of Soc. Sec*., 229 F. App'x. 140, 145 n.2 (3d Cir. 2007)); *see also Hammond v. O'Malley*, 735 F. Supp. 3d 567, 578 (E.D. Pa. 2024) ("[F]ailing to find an impairment severe is normally harmless error where the ALJ identifies other severe impairments at the second step and continues through the remainder of the five-step review.").

Here, the ALJ continued to consider Ms. S's mental impairments in step four of his analysis, even after deeming these impairments non-severe in step two.  For example, in determining Ms. S. had an RFC to perform light work, the ALJ considered the treatment notes of Dr. McDonough which indicated Ms. S. had a "depressed mood, but . . .  good attention and

concentration." DI 8-2 at 45.  He also weighed Dr. Travers' notes that Ms. S.'s depression screening showed "moderate depression" but also that she "routinely showed normal mood and affect." *Id.* at 44, 46.  Finally, the ALJ considered the evaluations of two state psychological consultants — Dr. Lisa Cannon and Dr. Anthony Galdieri — who determined Ms. S. had only mild limitations in her ability to maintain attention, concentration and pace.  *Id.* at 46.  Thus, because the ALJ properly weighed Ms. S.'s mental impairments in his overall RFC assessment, any error as to the severity of these impairments was harmless.

### B.  Objection 2: Dr. Travers' Opinion

Ms. S. also objects to the ALJ's decision to discredit the opinion of her treating physician, Dr. Travers, and instead assign Ms. S. a less restrictive RFC than he recommended. In particular, Ms. S. argues that the ALJ did not properly explain his rational for rejecting Dr. Travers' finding that Ms. S. requires the use of a cane while standing and walking.  DI 15 at 5-8.

The RFC determination is ultimately an administrative, not medical, decision that is reserved for the ALJ.[7]  *See* 20 C.F.R. § 404.1527(d)(2).  But to reach this decision the ALJ must first evaluate and weigh the medical opinions in the record.  *See* SSR 96-5p, 1996 WL 374183, at *2–3 (July 2, 1996).  As part of this analysis, the governing social security regulations require ALJs to evaluate the persuasiveness of all medical opinions contained in the record. § 404.1520c(a),(b).  When conducting this analysis, the ALJ should consider, among other factors, the supportability of the opinion, the consistency of the opinion, the medical source's relationship with the claimant (e.g., the length, frequency, purpose, and extent of the

---

[7] We largely borrow Judge Carlos's summary of the relevant rules for this section; we agree with her analysis entirely.  *See* DI 14 at 7-8.

relationship), and the medical source's specialization.  § 404.1520c(c).  The most important of these factors are supportability and consistency.[8]  § 404.1520c(b)(2).

When conducting this analysis, the ALJ must provide "a clear and satisfactory" explanation of his reasoning that contains enough detail to permit meaningful judicial review. *See Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001) (citation modified); *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119-20 (3d Cir. 2000).  Otherwise, the reviewing court is unable to discern whether the ALJ's decision is supported by substantial evidence.  *See Cotter v. Harris,* 642 F.2d 700, 704-05 (3d Cir. 1981).  This is especially true when there is "conflicting probative evidence in the record."  *See Fargnoli*, 247 F.3d at 42.  While the ALJ may weigh the evidence and choose what evidence to credit, he cannot reject contradictory evidence for "no reason or the wrong reason."  *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citation modified).

Here, we agree with Judge Carlos that the ALJ properly evaluated Dr. Travers' opinion and provided a satisfactory explanation for finding it unpersuasive.  As background, Dr. Travers completed a medical source statement for Ms. S. on September 24, 2021 which the ALJ summarized as follows:

> [Dr. Travers] identified the claimant's impairments as lumbar spinal stenosis, fibromyalgia, and chronic pain. He did not mention joint problems, mental health concerns, obesity, hypertension or hyperlipidemia. He opined that the claimant was not able to walk any city blocks due to pain and that she was limited to sitting 15 minutes at one time; standing 10 minutes at one time and sitting, standing, or walking less than 2 hours total during [an] 8-hour workday. He also opined that the

---

[8] Supportability refers to the extent to which the medical source opinions are backed up by objective medical evidence and supporting explanations.  20 C.F.R. § 404.1520c(c)(1).  Consistency refers to the extent to which the evidence is consistent with evidence from other medical and nonmedical sources.  § 404.1520c(c)(2).

claimant required the use of a cane and that she was limited to rarely lifting/carrying less than 10 pounds, never more, and to never twisting, stooping, crouching, squatting or climbing ladders or stairs. He found that her symptoms would be severe enough to interfere with attention and concentration 25% or more of the workday and that she was likely to miss more than 4 workdays each month. He opined that she was incapable of even low stress work and he stated that the claimant's medications caused side effects including fatigue and loss of concentration and focus.

DI 8-2 at 45; *see also* DI 8-7 at 150-53.

The ALJ then provided a sufficient explanation for why Dr. Travers' opinion was worthy of dismissal.  As for supportability, the ALJ reasoned that Dr. Travers' statement was not backed up by objective medical evidence in the record, including the fact that Ms. S's MRI results showed only mild to moderate degenerative disease.  *See* DI 8-2 at 45-46.  Dr. Travers' statement was also undermined by the fact that his treatment notes and care plans did not demonstrate the need for the extreme work limitations recommended in his opinion.  DI 8-2 at 45-46.  For example, while Ms. S. often reported having chronic pain, her physical examinations were normal with no specific musculoskeletal findings. [9]  *See* DI 8-7 at 117-149.  As for

---

[9] More specifically, as Judge Carlos accurately summarized, Dr. Travers' notes revealed that Ms. S. had chronic pain that, in 2018, was stable on medication.  DI 8-2 at 41-42.  Ms. S. followed up in June 2019, and in response to reports of worsening chronic pain, Dr. Travers ordered an MRI and advised that Ms. S. return in six months.  *Id* at 42.  At that follow-up appointment, in December 2019, Ms. S. complained that her back pain worsened after physical therapy, but Dr. Travers noted that she had normal extremities, and he did not mention musculoskeletal findings, joint pain or tender points.  *Id.*   Primary care records from February 2020 indicate that Ms. S. reported fatigue and a cough, but there was no mention of back or joint pain.  *Id.* at 43.  At a follow up appointment in June 2020, Ms. S. complained that her chronic back pain was worse when she worked.  *Id.*  However, her physical examination was within normal limits and Dr. Travers once again did not note any musculoskeletal findings.  *Id.*  On August 19, 2020, Plaintiff's alleged onset date of her disability, Dr. Travers observed that Ms. S. had "kyphosis due to pain and marked discomfort with transfers."  *Id.*  At her visit three months later, in November 2020, Dr. Travers' notes were virtually the same as her last visit and once again did not make any specific musculoskeletal findings or treatment plan.  *Id.* at 44.  A month later, during a telephone visit, Ms. S.  indicated that she was still in pain and needed a

13

consistency, the ALJ explained how Dr. Travers' conclusions were undercut by other medical sources.  For example, Dr. Herman Lawson — a neurologist who performed tests on Ms. S. in September 2019 — noted that Ms. S. was able to rise from a seated position without difficulty and that the EMG/nerve conduction study he ordered revealed no significant abnormalities.  DI 8-2 at 42; DI 8-7 at 6, 10.  Second, Dr. Robert McMurtrie — a pain management specialist for Ms. S. — indicated in January 2020 that she had normal gait, no gross motor deficits, and ambulates without difficulty.  DI 8-2 at 42-43; DI 8-7 at 17.  Finally, Dr. Jay Shaw — a state medical consultant — reviewed the evidence in December 2020 and assessed that Ms. S. could lift/carry 20 pounds frequently, 25 pounds occasionally, sit, stand, or walk about 6 hours each in an 8-hour work day, and could occasionally climb ramps and stairs. [10]  DI 8-2 at 46; DI 8-3 at 11. All in all, we think that the ALJ's rejection of Dr. Travers' medical source statement was supported by a clear and satisfactory explanation.

As for Ms. S.'s more specific objection that the ALJ did not sufficiently rebut Dr. Travers' opinion that Ms. S. would need a cane in the workplace, we disagree.  The ALJ explained that the objective evidence in the record did not substantiate her need for a cane, and this conclusion was reinforced by his analysis of Ms. S.'s medical treatment notes which either lack any reference to the need for a cane or specifically say that Ms. S. did not use assistive devices.[11]  *See* DI 8-2 at 40-45; DI 8-7 at 6, 17.  We also found it compelling that in Ms. S.'s

---

recertification for her medical marijuana.  *Id.*  Dr. Travers agreed to recertify her, but his notes lacked any specific findings or complaints by Ms. S. other than "pain."  *Id.*  Finally, at a visit in May 2021, Dr. Travers' notes indicated that Ms. S.'s chronic pain was stable on medication.  *Id.*

[10] These conclusions were affirmed by Dr. Ed Malloy — a second state agency medical consultant — on reconsideration.  *See* DI 8-2 at 46; DI 8-3 at 27.

[11] We acknowledge that much of the ALJ's rebuttal to Dr. Travers' cane recommendation

14

Function Report, which the ALJ expressly considered, she did not indicate that she uses a cane. *See* DI 8-6 at 28. All in all, the ALJ's reasoning for dismissing Ms. S.'s need for a cane was more than adequate.

## III.   Conclusion

Accordingly, we adopt Judge Carlos's R&R and find that the ALJ's decision is supported by substantial evidence. An appropriate order follows this memorandum.

---

comes from paragraphs separate from where he directly addresses Dr. Travers' medical source statement. Perhaps the ALJ could have organized his decision more clearly. But our job as the reviewing court is simply to determine whether the ALJ's findings are supported by substantial evidence, and here the ALJ's opinion as a whole meets this standard.